IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DAVID L. KELLIS,                            )
                                            )
                    Plaintiff,              )
                                            )
        v.                                  )               1:16CV395
                                            )
U.S. BANK, N.A., FEDERAL                    )
DEPOSIT INSURANCE CORPORATION,              )
OCWEN LOAN SERVICING, LLC.,                 )
HSBC BANK USA, N.A., and                    )
TRUSTEE SERVICES OF                         )
CAROLINA, LLC.,                             )
                                            )
                    Defendants.             )


**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff David L. Kellis, proceeding <u>pro se</u>, has asserted various claims under

both federal and North Carolina state law regarding the foreclosure of his property

in Burlington, North Carolina.  This matter is before the Court on four motions: (1)

Defendant Trustee Services of Carolina's ("Trustee Services") Motion to Dismiss

[Doc. #13], (2) Defendant U.S. Bank, N.A.'s ("U.S. Bank") Motion to Dismiss [Doc.

#20], Defendant Federal Deposit Insurance Corporation's ("FDIC") Motion to

Dismiss [Doc. #26], and Defendants Ocwen Loan Servicing, LLC ("Ocwen") and

HSBC Bank USA, N.A.'s ("HSBC") Motion to Dismiss [Doc. #31].

The Court has considered all Defendants' Motions to Dismiss [Docs. #13,

20, 26, 31] and supporting documents [Docs. #14, 21, 27, 32].  Mr. Kellis has not

filed responses to any of the Defendants' Motions despite being notified several times of his right to do so.  (June 20, 2016 Letters [Docs. #22, 23]; July 1, 2016 Letter [Doc. #29]; July 12, 2016 Letter [Doc. #33].)  Under Local Rule 7.3(k), a motion that is uncontested may be granted without further notice.  Nevertheless, because one claim is barred by the Rooker-Feldman doctrine, because three defendants were not properly served, and because the remaining allegations fail to state a claim, this matter will be dismissed on the merits.

I.

The instant action arises out of the foreclosure of Mr. Kellis' residence at 1434 Greenwood Drive, Burlington, North Carolina.  Mr. Kellis alleges that in December 2002, he executed a promissory note ("Note") naming U.S. Bank as Lender, which was secured by a deed of trust ("Deed") also naming U.S. Bank as the Lender. (Compl. [Doc. #1] at ¶ 10.)  The same month, the Deed was recorded in Alamance County, North Carolina. (Id. ¶ 11.)  From 2004 through 2015, several appointments of substitute trustee were recorded in Alamance County culminating in the appointment of Trustee Services as Trustee. (Id. ¶¶ 13-16.)  In addition, in 2015, three Assignments of Deed of Trust were filed in Alamance County resulting in all rights being assigned to HSBC. (Id. ¶¶ 17-19.)  On February 18, 2016, Mr.

2

Kellis' property was sold at a foreclosure sale. (Ex. I, Report of Foreclosure Sale/Resale [Doc. #21-9].)[1]

According to the Complaint, sometime around March 18, 2016, Mr. Kellis received a "Notice to Vacate" the subject property. (Id. ¶ 20.) Mr. Kellis claims that this was the first notice of any type that he received about any foreclosure proceeding. (Id.) Sometime around April 13, 2016, Mr. Kellis wrote to Trustee Services raising concerns about the lack of notice and the nature of the transfers and assignments of the deed of trust. (Id. ¶ 24.) As of the date of filing his Complaint, Mr. Kellis had not received any response from Trustee Services. (Id. ¶ 25.)

---

[1] Although this documentation was presented to the Court by U.S. Bank and not by Mr. Kellis, the Court may consider such documents.

> In addressing a dismissal motion, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Stratton v. Mecklenburg Cty. Dep't of Soc. Servs., 521 F. App'x 278, 290 n.22 (4th Cir. 2013) (recognizing that "records of [state court] proceedings constitute pertinent facts in this litigation, properly subject to judicial notice"); Fed. R. Civ. [sic] P. 201.

Thomas v. SunTrust Mortg., Inc., No. 1:14CV518, 2014 WL 4641168, at *2 n.1 (M.D.N.C. Sept. 16, 2014), adopted by, Order and Judgment, (M.D.N.C. Oct. 15, 2014). Mr. Kellis refers to and relies on the foreclosure in his Complaint. And to date, no party has disputed the authenticity of the foreclosure documents. As discussed elsewhere, Mr. Kellis received two extensions of time to respond to the motions to dismiss which appended these documents but elected not to do so.

On April 29, 2016, Mr. Kellis commenced the present action against Defendants U.S. Bank, FDIC, Trustee Services, HSBC, and Ocwen (collectively "Defendants"). The Complaint asserts claims for: (1) Violations of Real Estate Settlement Procedures Act ("RESPA") against Ocwen (Id. ¶¶ 52-55); (2) Violations of Federal Truth-In-Lending Act ("TILA") against U.S. Bank (Id. ¶¶ 56-60); (3) Misrepresentation against all Defendants (Id. ¶¶ 61-67); (4) Conversion against U.S. Bank, Ocwen, and HSBC (Id. ¶¶ 68-72); (5) To Set Aside Wrongful Foreclosure against all Defendants (Id. ¶¶ 73-80); (6) Civil Conspiracy against all Defendants (Id. ¶¶ 81-86); and (7) Slander of Title against all Defendants (Id. ¶¶ 87-100).

Mr. Kellis' Complaint references attached exhibits, but no exhibits were ever filed. Trustee Services alerted Mr. Kellis to this in its Memorandum in Support of Motion to Dismiss. ([Doc. #14] at 3.) Twice, Mr. Kellis moved for an extension of time to address the motions to dismiss (July 19, 2016 Mot. for Extension of Time [Doc. #34]; August 25, 2016 Mot. for Extension of Time [Doc. #35]) and, both times, his motion was granted. (July 22, 2016 Text Order; August 29, 2016 Text Order.) Despite this extra time, Mr. Kellis has not responded to any of the motions to dismiss nor has he filed any exhibits. The time for Mr. Kellis to respond has passed making all motions to dismiss ripe for review. For the reasons discussed below, the Defendants' motions will be granted and this matter will be dismissed.

## II.

Several Defendants argue that the claim to set aside the state foreclosure is barred in the present action pursuant to the Rooker-Feldman[2] doctrine. A motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(1), raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). It is the plaintiff's burden to prove jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Three Defendants argue they were inadequately served with process, making the exercise of personal jurisdiction over them improper pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5).[3] A motion pursuant to Federal Rule of Civil Procedure 12(b)(5) is the appropriate means for challenging the sufficiency of service of process. Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C.1996). The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4. Id.

---

[2] The doctrine is named for the two Supreme Court cases from which it is derived: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[3] Trustee Services did not include Rule 12(b)(2) in its motion to dismiss, only arguing insufficient process under 12(b)(5). However, this distinction does not impact the outcome of the analysis.

All Defendants assert that Mr. Kellis has failed to state any claim upon which relief can be granted. "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Lindsay v. Nichino America, Inc., 202 F. Supp. 3d 524, 528 (M.D.N.C. 2016)(quoting Estate of Williams–Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004)).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 662. Under Iqbal, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare

assertions amounting to nothing more than a "formulaic recitation of the elements"). Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." 556 U.S. at 681.

When a party is proceeding pro se, that party's filings are "to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). It is important to note that, in the case of a pro se plaintiff, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

**III.**

**A.**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), U.S. Bank, HSBC, and Ocwen assert that this action is an appeal of the state court foreclosure which is not properly before the Court. The Rooker-Feldman doctrine is a jurisdictional rule that prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544

7

U.S. 280, 284 (2005).  In other words, the doctrine precludes claims that seek redress for an injury caused by a state-court decision, because such a claim essentially asks "the federal district court to conduct an appellate review of the state-court decision."  Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quoting Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006)).

In January, 2016, Mr. Kellis' property was foreclosed.  (Ex. H, Order to Allow Foreclosure Sale [Doc. #21-8].)  The property was ultimately sold at a foreclosure sale on February 18, 2016.  (Ex. I, Report of Foreclosure Sale/Resale [Doc. #21-9].)  In North Carolina, the Clerk of Superior Court presides over power-of-sale foreclosure actions.  See N.C. Gen. Stat. § 45-21.16(d).  To find that a foreclosure initiated under a power of sale is valid, the clerk of court must determine that a valid debt exists, the debtor is in default, the trustee has the right to foreclose, and sufficient notice was given.  See  N.C. Gen. Stat. § 45-21.16(d)-(d1); Phil Mech. Const. Co. v. Haywood, 325 S.E.2d 1, 3 (N.C. Ct. App. 1985).  Any issue that the clerk decides in a foreclosure proceeding under N.C. Gen. Stat. § 45-21.16(d) is conclusive unless appealed and reversed and cannot be relitigated in a subsequent lawsuit.  See In re Atkinson-Clark Canal Co., 67 S.E.2d 276, 278 (N.C. 1951); Douglas v. Pennamco, Inc., 331 S.E.2d 298, 300 (N.C. Ct. App. 1985).  A party may appeal a decision of the clerk of court to the superior court, which reviews de novo the same issues that the clerk resolved.  See N.C. Gen. Stat. § 45-21.16(d1).

8

Pursuant to these statutes, the Clerk of Superior Court in Alamance County made a determination that: (1) HSBC was the holder of the Kellis note; (2) the note was a valid debt; (3) the note was in default and HSBC had the right to foreclose under a power of sale; (4) notice of the hearing had been served on the record owners of the real estate to be foreclosed; (5) pre-foreclosure notice was provided pursuant to N.C. Gen. Stat. § 45-102; and that (6) Mr. Kellis had not shown any valid legal reason why the foreclosure should not proceed.  (Ex. H, Order to Allow Foreclosure Sale [Doc. #21-8].)  In his claim to set aside wrongful foreclosure, Mr. Kellis alleges that the Defendants never "were properly authorized to initiate such foreclosure and sale."  (Compl. ¶ 75.)  However, this was addressed by the state court in the foreclosure action.  As this claim is, essentially, a direct appeal of the state court foreclosure action, subject matter jurisdiction is barred under Rooker-Feldman.

**B.**

Trustee Services, U.S. Bank, and FDIC all allege that they were not properly served in the present action.  A defendant may assert insufficient service of process as a basis for dismissal. Fed. R. Civ. P. 12(b)(5).  Federal Rule of Civil Procedure 4(h), which governs the service of process upon a corporation, provides that service may be accomplished by either delivering a copy of the summons and complaint to an officer or agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(f).  Rule 4(e) also provides that service of

9

process may be accomplished pursuant to the law of the state in which the district

court sits.  Id.  North Carolina's requirements for service of process are virtually

identical for all practical purposes with the requirements of Federal Rule 4. See

N.C. R. Civ. P. 4(j)(1).  Accordingly, Mr. Kellis could have effectuated service

pursuant to Federal Rule 4 or North Carolina's laws for service of process.

However, Mr. Kellis did not follow either statute.  Mr. Kellis mailed the summons in

the present action to Trustee Services, 5710 Oleander Drive, Suite 204,

Wilmington, North Carolina 28403 (Summons [Doc. #3] at 1); U.S. Bank, 4325

17th Avenue SW, Fargo, North Dakota, 58103 (id. at 7); and FDIC, 4141 Parklake

Avenue, Suite 230, Raleigh, North Carolina 27612 (id. at 3).  He addressed each

to the organization, but not to an officer, agent, director, or member of the

governing body.

    North Carolina requires that service of process statutes be strictly construed

and followed.  Greenup v. Register, 410 S.E.2d 398, 400 (N.C. Ct. App. 1991);

Broughton v. Dumont, 259 S.E.2d 361, 363 (N.C. Ct. App. 1979).  This is true

even where defendants have actual notice of the action.  Hoyle v. United Auto

Workers Local Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006); Stack v.

Union Reg'l Mem'l Med. Ctr., Inc ., 614 S.E.2d 378, 382 (N.C. Ct. App. 2005).

When a statute provides for designated methods of service and a plaintiff has

failed to comply with those methods, there is no valid service.  Broughton, 259

S.E.2d at 363.  In the present action, the summons and complaint were not

directed or addressed to any agent or officer of any of the corporate entities as

required by both the Federal and North Carolina Rules of Civil Procedure.  Because

Trustee Services, U.S. Bank, and FDIC were not properly served, the Court did not

acquire jurisdiction over these Defendants.  Accordingly Trustee Services', U.S.

Bank's, and FDIC's motions will be granted.

**C.**

In addition, Mr. Kellis' remaining causes of action fail to state a claim upon

which relief can be granted and, therefore, must be dismissed pursuant to Federal

Rule of Civil Procedure 12(b)(6).

**i.**

Mr. Kellis' first claim asserts violations of RESPA against Ocwen.

> Enacted in 1974, RESPA regulates the market for real estate
> "settlement services," a term defined by statute to include "any
> service provided in connection with a real estate settlement," such as
> "title searches, . . . title insurance, services rendered by an attorney,
> the preparation of documents, property surveys, the rendering of
> credit reports or appraisals, . . . services rendered by a real estate
> agent or broker, the origination of a federally related mortgage
> loan . . ., and the handling of the processing, and closing or
> settlement."

Freeman v. Quicken Loans, Inc., 566 U.S. 624, 132 S. Ct. 2034, 2037−38 (2012)

(internal citation and footnote omitted).

> RESPA creates a private right of action for only three types of
> wrongful acts: (1) payment of a kickback and unearned fees for real
> estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a
> buyer to use a title insurer selected by the seller, 12 U.S.C.
> § 2608(b); and (3) the failure by a loan servicer to give proper notice

11

of a transfer of servicing rights or to respond to a QWR[4] for information about a loan, 12 U.S.C. § 2605(f).

Librizzi v. Ocwen Loan Servicing, LLC, 120 F. Supp. 3d 1368, 1378–79 (S.D. Fla. 2015).  In support of his RESPA allegation against Ocwen, Mr. Kellis asserts that

> [i]n violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiff, Defendant Ocwen, in mortgage statements and "payment histories," falsely represented that certain portions of the monthly mortgage payments submitted by Plaintiff would be applied toward "principal" and "interest," when, in fact, Ocwen either knew, or should have known, that said payments would be "pooled" with payments from many other borrowers into a trust, and subsequently disbursed to undisclosed investors as "returns" under the terms of securitization, which differed greatly from those terms contained in the subject Note and Deed of Trust.

(Compl. ¶ 54.)  This claim is not a RESPA claim at all.  It is an attack on Ocwen allegedly pooling loans.  The Complaint is absent any facts that relate to any payment of a kickback and unearned fees to Ocwen for real estate settlement services, Ocwen requiring Mr. Kellis to use a title insurer selected by the seller, or the failure of Ocwen to give proper notice of a transfer of servicing rights or to respond to a QWR for information about a loan.  Accordingly, Mr. Kellis has failed to state a RESPA claim and this claim will be dismissed.

**ii.**

Mr. Kellis next alleges a violation of TILA against U.S. Bank.

> Defendant U.S. Bank, N.A., as loan "originator," is liable for its failure to disclose the fact that it did not lend any money to the Plaintiff, but instead, used its position to conceal the true source of funding

---

[4] Qualified Written Request.

12

for the subject loan.  The subject securitized loan, as all securitized loans, was sold "forward," or, <u>before the borrower executed the loan documents</u>.  This means the loan was funded by an as-yet undisclosed third party which acted as a "middleman" but which provided the funds via wire transfer to the local escrow agent.  U.S. Bank received a "finder's fee" for acting as the "originator."

(Compl.  ¶ 57)  Mr. Kellis goes on to assert that

U.S. Bank was required to disclose the true name of the source of the funds as the "lender," as well as the details of the actual transaction which occurred (the securities transaction) pursuant to 15 USC sec. 1605 and Regulation Z. Concealing this information is precisely what Regulation Z defines as "predatory per se."

In addition, Defendant U.S. Bank never, at any time, disclosed to the Plaintiff the fact that his payments funded a disguised securities transaction, which never could have resulted in a "satisfaction of mortgage" or clear, unencumbered conveyance of title bad he paid the loan in full under the existing circumstances.

(Id. ¶¶ 58-59.)

TILA "is a federal statute applicable only to creditors and governs the terms and conditions of consumer credit by requiring that lenders disclose certain details about loans, fees, and costs." Davis v. Wilmington Fin., Inc., No. PJM 09-1505, 2010 WL 1375363, at *4 (D. Md. Mar. 26, 2010).  U.S. Bank asserts that this claim is time-barred.  The statute of limitations for claims for monetary damages arising under TILA is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  This limitations period begins to run when the borrower accepts the creditor's extension of credit. Wachtel v. West, 476 F.2d 1062, 1065 (6th Cir.1973).  Mr. Kellis' claim of failure to disclose occurred when the loan

13

originated on December 22, 2002.  ([Doc. #21] at 10.)  U.S. Bank's argument is

supported by the facts alleged in the Complaint and Mr. Kellis' claim is time-barred.

Any failure to disclose happened almost fifteen years ago.  Therefore, the statute

of limitations has run and this claim will be dismissed.

### iii.

Mr. Kellis next alleges a Misrepresentation claim against all

Defendants.

> Each Defendant to this action has knowingly and intentionally
> concealed material information from Plaintiffs which was required
> by Federal and State Laws and Regulations to be disclosed to the
> Plaintiff at all stages of the process – before and at the
> "origination" of the loan; during the collection of the loan payments;
> prior to and during the foreclosure process; and in post- foreclosure
> documents recorded in Alamance County and/or filed with the North
> Carolina General Court of Justice, Superior Court Division, concerning
> the subject loan and property.

(Compl. ¶ 62.)  In North Carolina, the "essential elements" of a claim of fraud by

misrepresentation are: "(1) a false representation or concealment of a material fact,

(2) that was reasonably calculated to deceive, (3) which was made with the intent

to deceive, (4) that did in fact deceive, and (5) resulted in damage."  Jolly v. Acad.

Collection Serv., 400 F. Supp. 2d 851 (M.D.N.C. 2005).  Federal Rule of Civil

Procedure 9(b) heightens the pleading requirement for allegations of fraud.  "To

satisfy the specificity requirements of Rule 9(b), it is plaintiff's obligation to plead

the time, place, and contents of the false representations, as well as the identity of

the person making the representation and what such person obtained thereby."

14

Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted).

Mr. Kellis has failed to state a claim for misrepresentation against any Defendant. The Complaint generally asserts fraudulent conduct by all the defendants, but it does not cite any email, letter, conversation, fax, or other communication (or lack of communication) that either deceived anyone or resulted in any damage. There is no specific allegation of time, place, nor contents of any specific misrepresentation. The Complaint is void of any facts which could plausibly be read to state a claim for misrepresentation and this claim will be dismissed.

**iv.**

Mr. Kellis next asserts a claim for conversion against U.S. Bank, Ocwen, and HSBC.

> [N]ot one single dollar from any monthly mortgage payment was ever properly paid to any "creditor" who was the "holder in due course" and who applied the amounts of "principal" and "interest" as was promised in the loan documents. Plaintiff's payments were, therefore, converted by these Defendants. . . .

(Compl. ¶ 71.) "Conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. Gallimore v. Sink, 218 S.E.2d 181, 183, (N.C. Ct. App. 1975). "[T]wo essential elements are necessary in a complaint for conversion—there must be ownership in the plaintiff

15

Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted).

Mr. Kellis has failed to state a claim for misrepresentation against any Defendant. The Complaint generally asserts fraudulent conduct by all the defendants, but it does not cite any email, letter, conversation, fax, or other communication (or lack of communication) that either deceived anyone or resulted in any damage. There is no specific allegation of time, place, nor contents of any specific misrepresentation. The Complaint is void of any facts which could plausibly be read to state a claim for misrepresentation and this claim will be dismissed.

**iv.**

Mr. Kellis next asserts a claim for conversion against U.S. Bank, Ocwen, and HSBC.

> [N]ot one single dollar from any monthly mortgage payment was ever properly paid to any "creditor" who was the "holder in due course" and who applied the amounts of "principal" and "interest" as was promised in the loan documents. Plaintiff's payments were, therefore, converted by these Defendants. . . .

(Compl. ¶ 71.) "Conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. Gallimore v. Sink, 218 S.E.2d 181, 183, (N.C. Ct. App. 1975). "[T]wo essential elements are necessary in a complaint for conversion—there must be ownership in the plaintiff

and a wrongful conversion by defendant." Id.  Here, there are no facts in the

Complaint to support a claim that U.S. Bank, Ocwen, or HSBC "exercised the right

of ownership" over anything that belonged to Mr. Kellis or excluded his rights in

anything.  In addition, Mr. Kellis has failed to state a plausible claim that he had

ownership rights in his mortgage payments after he made them.  Accordingly, Mr.

Kellis has failed to state a claim for conversion and this claim will be dismissed.

**v.**

Mr. Kellis' Civil Conspiracy claim against all Defendants rests on the

allegation that

> Defendants agreed between and among themselves to engage in
> the conspiracy to defraud, for the common purpose of accruing
> economic gains for themselves at the expense of, and detriment to,
> the Plaintiff, to wit: the unlawful foreclosure and "sale" of Plaintiff's
> home.

(Compl. ¶ 83.)  A cause of action for a civil conspiracy under North Carolina law is

really an action for damages caused by acts in furtherance of the conspiracy and

not for the conspiracy itself.  Johnson v. Beverly–Hanks & Assocs., Inc., 388

S.E.2d 584, 588–89 (N.C. Ct. App. 1990) (noting that there is no cause of action

for civil conspiracy unless the conspiracy results in damage to plaintiff), aff'd in

part on other issues, rev'd in part on other issues, 400 S.E.2d 38 (N.C. 1991); see

also Dalton v. Camp, 519 S.E.2d 82, 89 (N.C. Ct. App. 1999) (noting that there is

no civil conspiracy cause of action per se).  A claim for civil conspiracy requires

showing "an agreement between two or more persons to do an unlawful act or to

16

do a lawful act in an unlawful way that results in damages to the claimant."

Dalton, 519 S.E.2d at 89 (citations omitted).  Here, there are no facts alleged to

support an inference that any defendant agreed with any other defendant to act in

any way at all.  And further, because a civil conspiracy claim under North Carolina

law is not really a claim at all, but an assertion that a specific harm

(misrepresentation, conversion, etc.) was inflicted by persons acting in concert, it

has no separate, substantive recognition in civil actions brought under North

Carolina law.  When the substantive claims fail, so must any consideration of their

being inflicted by concerted activity.

**vi.**

The final claim is one for Slander of Title against all Defendants.  To

establish a claim of slander of title, a plaintiff must show: "(1) the uttering of

slanderous words in regard to the title of someone's property; (2) the falsity of the

words; (3) malice; and (4) special damages." Broughton, 588 S.E.2d at 30.  Mr.

Kellis' slander of title claim rests upon the premise that his debt was improperly or

illegally assigned, that no valid debt exists, that he was not notified of any

foreclosure proceedings, and that Defendants "fabricated false instruments" in the

process.  (Compl. ¶¶ 88-96.)  Other than these generalized and conclusory claims,

the Complaint is devoid of factual information supporting a plausible inference that

any party "uttered false words" about the Kellis property at all, let alone with

malice.  Thus, this final claim will be dismissed.

17

**IV.**

For the reasons stated, **IT IS HEREBY ORDERED** that Trustee Services of Carolina, LLC's Motion to Dismiss [Doc. #13], U.S. Bank, N.A.'s Motion to Dismiss [Doc. #20], Federal Deposit Insurance Corporation's Motion to Dismiss [Doc. #26], and Ocwen Loan Servicing, LLC's and HSBC Bank USA, N.A.'s Motion to Dismiss [Doc. #31] are **GRANTED** and the action is **DISMISSED**.  A Judgment dismissing this action will be entered contemporaneously with this Order.

This the 30th day of March, 2017.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

18